```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                      HUNTINGTON
```

**ROSE MORRISON, Executrix**
**of the Estate of**
**Dwight R. Morrison,**

    **Plaintiff,**

**v.**                                 **Case No. 3:10-cv-00039**

**SULZER METCO (US), INC., and**
**JACOB KOLOJACO,**

    **Defendants.**


## O R D E R

Pending before the Court is Plaintiff's motion to compel responses to Plaintiff's request for production No. 15 (docket # 33), filed May 6, 2010.  Defendants filed their response in opposition (# 36), asserting that the request calls for production of irrelevant material, and Plaintiff filed her reply (# 40).

Plaintiff's complaint alleges that her decedent was killed when he was working "inside a hand spray booth applying a protective coating to a twelve-foot steel shaft rotating on a 'rigged' high velocity lathe."  (Complaint, # 1-1, ¶ 4, at 5.)

> The lathe had been modified by the defendant to operate
> at a high speed, was not designed for the spraying of
> protective coatings, was not properly guarded, and was
> otherwise unsafe which resulted in Mr. Morrison's
> decapitation and death.

Id.  Plaintiff's theory underlying her claim is more specifically set forth in her answer to Interrogatory No. 4, which asked the

facts and circumstances on which she relies.

> The defendants exposed Rick Morrison to a high speed rotating shaft which was not guarded to prevent accidental contact with the shaft or other rotating parts during hand spray operations. In addition, defendants exposed Rick Morrison to a lathe which would cause materials being sprayed to come out of the tailstock and potentially strike an operator.
>
> Defendants had actual knowledge that the lathe was unguarded as defendant, Sulzer, installed the lathe. Furthermore, employees advised management personnel, including Jacob Kolojaco, that clamps on the rotating shaft would pull and rip clothing and gloves during hand spray operations. In addition, actual knowledge can be proven through a violation of a statute, rule, or regulation imposing a mandatory duty.
>
> Defendant, Sulzer Metco, failed to provide guarding pursuant to the Code of Federal Regulations and the West Virginia Code. In addition, defendants failed to perform a mandatorily required hazard assessment/job safety analysis to determine the necessity of guarding as required by the Code of Federal Regulations. Furthermore, defendants failed to provide any training or safety training with respect to the lathe. These violations of mandatory statutes and regulations satisfy the actual knowledge element of the deliberate intent statute. In spite of the mandatory statutory and regulatory requirements, the defendants continued to allow Rick Morrison to spray on a daily basis with no guarding of the lathe, without proper training, and without ever performing the regulatorily [sic] required hazard assessment/job safety analysis.

(# 33-1, Ex. A at 2-3.)

Plaintiff's Request for Production No. 15 reads: "Any and all documents regarding loss inventory and/or damaged product due to improper spraying and/or poor results and/or otherwise in the hand spray booth." (# 33, at 2.) In subsequent correspondence, Plaintiff limited the scope and time frame to "the Barboursville

facility from the time of installation of the hand spray booth until Dwight R. Morrison's death" on February 25, 2009, and to the "parts or products being sprayed by the defendant which had to be redone or were not useable." Id. at 3. The motion to compel posits a theory "that the spraying procedure utilized by the defendants caused materials to come out of the tailstock of the lathe at issue and potentially strike an operator. * * * Upon information and belief, when shafts came loose from the lathe, they would bend, break or become un-useable to the defendant's client." Id. at 4. On this basis, Plaintiff contends that the request calls for relevant information.

    Defendants respond that the decedent was killed "when he was pulled into a lathe while performing HVOF [High Velocity Oxygen Fuel] spraying on a rotating shaft." (# 36, at 1.) They assert that Plaintiff's request "is not limited to products that were damaged, or became unusable, because the product came out of the tailstock." Id. at 3. Defendants contend that there are "numerous reasons other than coming out of the tailstock that can cause a product to become damaged or unusable." Id. at 4. They deny having documents which detail the specific reason why a particular product was damaged. Id. Finally, Defendants argue that Mr. Morrison died because he was pulled into the lathe, not because a product came out of the lathe and struck him. Id. Defendants also assert that if Plaintiff has a theory that a product came loose and

Mr. Morrison was near the lathe to adjust the tensioner, that theory is disproved by two photos provided at # 36-4, at 2-3. Without expert testimony to explain the photos, the undersigned declines to consider this argument.

In reply, Plaintiff contends that

> documents responsive to Request number 15 would tend to show, *inter alia*, the frequency of product issues/problems, the particular dates of product issues, whether there were multiple issues within a given time period before Mr. Morrison's death. In addition, any such documents can be correlated with repair records already produced by the Defendants and with documentation regarding repairs contained within a file generated by OSHA. Finally, any such documents may lead to the discovery of other admissible evidence as witnesses may be questioned about the documents. Accordingly, documents which reflect damages to product for "whatever reason" are in fact relevant.

(# 40 at 2.) With respect to the cause of Mr. Morrison's being pulled into the lathe, Plaintiff asserts that he may have been struck by a loose shaft and thereby became entangled, or that he was attempting to reach the tensioner and was knocked into the lathe. Id. at 3-4.

After review of the allegations of the complaint and the arguments of the parties, it appears to the Court that a significant fact is the apparent lack of guards or other protective structure around the lathe which would prevent an operator from being struck by loose product or entangled while the lathe was operating. Incidents of shafts rotating at high speed and becoming damaged during the spraying process, for whatever reason, should

alert management to problems with the equipment which could imperil the operator. The Court **FINDS** that, with respect to the lathe, tailstock and hand spray booth at the Barboursville facility, during the four years prior to February 25, 2009, any and all documents in Defendants' possession which relate to or mention (a) serious damage to product rendering it unusable, (b) injury to hand spray operators, and (c) incidents of catching clothing or gloves, are relevant and discoverable. Defendants are directed to produce such records to Plaintiff within three weeks of entry of this Order.

It is hereby **ORDERED** that Plaintiff's motion to compel is granted in part and denied in part. The parties will bear their own costs.

The Clerk is directed to transmit this Order to counsel of record.

ENTER: June 3, 2010

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge